**PROSKAUER ROSE LLP**
Proposed Counsel for the Debtors and Debtors-in-Possession
Jeffrey W. Levitan (JL-6155)
Adam T. Berkowitz (AB-3714)
1585 Broadway
New York, New York 10036-8299
Tel: (212) 969-3000
Fax: (212) 929-2900

**UNITED STATES BANKRUPTCY COURT,
EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------- x
**In re:**                                              :
                                                        :          Chapter 11
                                                        :
**CARITAS HEALTH CARE, INC., <u>et al.</u>,**[1]        :          Case Nos. 09-    (   )
                                                        :          through 09-    (   )
                                                        :
                                    **Debtors.**        :          (Jointly Administered)
------------------------------------------------------- x

**MOTION OF DEBTORS FOR AN ORDER (I) MAINTAINING CASH MANAGEMENT
SYSTEM AND EXISTING BANK ACCOUNTS, (II) AUTHORIZING
THE DEBTORS TO USE EXISTING BUSINESS FORMS, (III) GRANTING
A LIMITED WAIVER OF SECTION 345 INVESTMENT AND DEPOSIT
<u>REQUIREMENTS AND (IV) GRANTING RELATED RELIEF</u>**

Caritas Health Care, Inc. ("<u>Caritas</u>") and its affiliated debtors in the above

captioned chapter 11 cases, as debtors-in-possession (collectively, the "<u>Debtors</u>"), respectfully

represent:

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Caritas Health Care, Inc. (0364), Caritas Anesthesia Services, P.C. (4765), Caritas Cardiology Services, P.C. (1247), Caritas Emergency Medical Services, P.C. (5881), Caritas Family Health Services, P.C. (4113), Caritas Medical Services, P.C. (1143), Caritas OB/GYN Services, P.C. (1289), Caritas Pediatric Services, P.C. (6649) and Caritas Radiology Services, P.C. (1325).  The mailing address for all of the Debtors is 152-11 89th Avenue, Jamaica, New York 11432.

## SUMMARY OF RELIEF REQUESTED

1.        The Debtors' ability to continue and maintain their cash management system, existing bank accounts and existing business forms is critically intertwined with the efficient administration of these Chapter 11 cases and is essential to the Debtors' ability to effectuate the closure plan approved by the New York State Department of Health (the "Closure Plan").  Indeed, any disruption in the means by which the Debtors manage their financial affairs and satisfy their ordinary course post-petition obligations (and certain pre-petition obligations for which separate approval is being sought) would severely hamper their operations, thereby jeopardizing the Debtors' Chapter 11 cases at the outset.

2.        Accordingly, by this motion (the "Motion"), the Debtors seek entry of an order, substantially in the form annexed hereto as Exhibit A, pursuant to sections 105, 363, 364, and 503(b)(1) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (i) authorizing, but not requiring, the Debtors to continue using their cash management system and to maintain existing bank accounts, and authorizing a waiver of certain operating guidelines relating to such bank accounts, (ii) authorizing, but not requiring, continued use of existing business forms, at least until the Debtors' existing business forms stock is depleted, (iii) granting a limited waiver from the investment and deposit guidelines of section 345 of the Bankruptcy Code, (iv) authorizing the Cash Management Bank (defined below) to maintain, service and administer the Debtors' Cash Management Accounts (defined below), and (v) authorizing the Cash Management Bank to debit the bank accounts in the ordinary course of the Debtors' operations, as is more fully set forth herein.

3.    In support of the Motion, the Debtors rely upon and fully incorporate by reference the Affidavit of John Lavan, the Chief Restructuring Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Pleadings (the "Lavan Affidavit"), filed with the Court concurrently herewith.

## JURISDICTION

4.    The Court has jurisdiction over this Motion under 28 U.S.C. § 1334, which is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue of this proceeding is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

5.    On the date hereof (the "Petition Date"), the Debtors filed with this Court voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, the Debtors are continuing to operate their businesses and manage their affairs as debtors-in-possession.  No official committee of unsecured creditors has yet been appointed by the Office of the United States Trustee.

A.    **The Debtors' Business and Events Leading to Chapter 11 Filing**

6.    Caritas is a New York not-for-profit corporation that was formed by Wyckoff Heights Medical Center, also a New York not-for-profit corporation ("Wyckoff"),[2] on March 9, 2006, for the purpose of acquiring from St. Vincents Catholic Medical Centers of New York ("SVCMC"), and thereafter operating, two hospitals and ancillary facilities in Queens, New

---

[2]    Wyckoff owns and operates a 350 bed hospital in Brooklyn, New York.

York—Mary Immaculate Hospital ("Mary Immaculate")[3] and St. John's Queens Hospital ("St. John's")[4] (collectively, the "Caritas Hospitals").

7.      The Debtors have experienced financial difficulties caused both by problems in existence prior to the Caritas' acquisition of the Caritas Hospitals and those arising in the course of the subsequent turn-around efforts.  Like many entities in this difficult economic environment, the Debtors have continued to experience significant losses despite various efforts to improve financial performance.  As the Debtors financial condition continued to worsen, the Debtors found themselves unable to maintain their ongoing operations.  After considering the alternatives, the Debtors determined that they could no longer sustain operations or obtain necessary financing without resorting to the protections afforded under Chapter 11 of the Bankruptcy Code.

8.      As of November 30, 2008, Caritas had aggregate assets (at book value) and liabilities, each on a consolidated, unaudited basis of approximately $87,234,264 and approximately $188,277,388, respectively.  For the fiscal year ended December 31, 2008, the Debtors incurred a net loss of approximately $64,000,000.

**B.      Overview of Cash Management System; Description of Bank Accounts**

9.      Like most health care providers, in the ordinary course of their operations, the Debtors maintain an integrated network of bank accounts that facilitate the timely and

---

[3]      Mary Immaculate has on its campus 189 general acute hospital beds, an emergency department, and the 115-bed Monsignor Fitzpatrick Skilled Nursing Pavilion.  In addition to providing outpatient services at the hospital, it provides outpatient services at the St. Dominic's Family Health Center, located at 114-39 Sutphin Boulevard in Jamaica, Queens, and at two methadone maintenance clinics on Archer Avenue in Jamaica, Queens.

[4]      St. John's has 227 general acute hospital beds and an emergency department.  In addition to providing outpatient services at the hospital, it provides outpatient services at St. John's Family Health Center, located at 95-25 Queens Boulevard in Rego Park.

efficient collection, concentration, management and disbursement of funds (the "Cash Management System").  This network is comprised of approximately 15 bank accounts (the "Bank Accounts") maintained at JPMorgan Chase & Co. (the "Cash Management Bank"), through which the Debtors collect, transfer and disburse, funds generated through their operations and facilities.  The Debtors also maintain a system designed to accurately record such collections, transfers and disbursements as they are made.  As of the Petition Date, the principal flow of funds through the Cash Management System[5], which the Debtors seek to maintain, is as follows:

10.    Collections.  Payments for medical services rendered are made directly by individual patients as well as on their behalf through their health insurance providers and through various governmental programs, including, but not limited to, Medicare and Medicaid. These payments are deposited into one of two deposit accounts – one for payments from state and federal governmental entities, and one for all other payments (each, a "Deposit Account" and together, the "Deposit Accounts"). These funds are then swept on a daily basis to a collection account of the Debtors' secured lender with a lien in such receivables, Healthcare Finance Group, Inc. and certain of its affiliates ("HFG"). Until immediately prior to the Petition Date, after sweeping the Deposit Accounts, HFG would release collections upon Caritas' request in an amount sufficient to satisfy its current operating expenses into an operating account held by the Debtors (the "Operating Account"). The remainder of the collections were held by HFG but was not applied to the principal term loan balance due to HFG. Immediately prior to the Petition

---

[5]        A list of the Bank Accounts is attached hereto as Exhibit B, and a chart depicting the cash management system is attached hereto as Exhibit C.

Date, upon notice to the Debtors, HFG applied the remaining collections in its possession against the term loan balance.

11.     All other payments received by the Debtors, including income streams from rents and other non-medical receivables are deposited directly into the Debtors' Operating Account.

12.     In addition, as a not-for-profit charitable organization, from time to time, the Debtors hold fundraising events.  The funds generated at such events are deposited into a dedicated account (the "<u>Foundation Account</u>") for the receipt of charitable donations.  Moreover, from time to time the Debtors receive funds from New York State which are generally transferred into and held in the Foundation Account after their initial deposit into the Operating Account.  Such proceeds are then transferred back into the Operating Account on an as-needed basis to fund shortfalls in HFG remittances, and are subsequently transferred to the appropriate disbursement accounts, as described below.

13.     <u>Disbursements</u>.  The Debtors make disbursements in the following general categories:

(a)     <u>Payroll</u>: Caritas contract with Automatic Data Processing, Inc. ("<u>ADP</u>") to assist them with the payroll process.  To commence the payroll process, Caritas provides ADP with a spreadsheet with the proper payroll amounts.  ADP then transmits instructions for the Cash Management Bank to transfer funds from Caritas' Operating Account into Caritas' payroll account (the "<u>Payroll Account</u>") in an amount sufficient to cover Caritas' bi-weekly payroll obligations.  Subsequently, ADP issues a further instruction to the Cash

Management Bank and employees are then paid by check or by direct deposit into their personal accounts.

(b)    General Operational Disbursements.  The Debtors also maintain a zero-balance account (the "Accounts Payable Account") from which the Debtors' non-payroll accounts payable are satisfied by check, wire or ACH to the various third party payees.  The Accounts Payable Account is then funded on an as-needed-basis from the Operating Account.

(c)    Professional Corporation Deficit Funding.  Caritas provides various medical services through affiliated professional corporations (the "PC Debtors").[6]  The receivables of each PC Debtor are collected by MedTech Professional Billing Services, Inc., or another third party collections agent.  With the exception of the PC Debtors' payroll, collections are typically sufficient to cover the costs and expenses associated with the operations of the PC Debtors.  In order to cover the PC Debtors' payroll expenses, Caritas provides deficit funding to the PC Debtors.  Accordingly, the Debtors request that all such transfers be granted super-priority administrative expense claim status pursuant to Section 364 of the Bankruptcy Code and that each transfer be secured by a grant of a first priority lien on the relevant PC Debtors' accounts receivables and other assets.

14.    The Debtors' Cash Management System is similar to those commonly employed by health care providers of comparable size and complexity.  The continued use of the Debtors' Cash Management System allows for, among other things, the efficient tracking and control of funds, while at the same time reducing administrative costs.  Moreover, the Debtors'

---

[6]    The Debtors are simultaneously seeking authority to continue remitting payment to the PC Debtors and certain medical providers, as necessary, in a separate Wage Motion that is being filed concurrently herewith.

pre-petition secured lenders are intimately familiar with the Debtors' cash management system,

which is likely to help facilitate the transition into the Chapter 11 process.

## RELIEF REQUESTED

15.     The Office of the United States Trustee for Region 2 has established

Operating Guidelines and Reporting Requirements for Debtors In Possession and Trustees (the

"Operating Guidelines") which provide, among other things, that: (a) upon the filing of a petition

for relief under Chapter 11 of the Bankruptcy Code, a debtor must immediately close all of its

existing bank accounts and open new debtor-in-possession accounts, (b) a debtor must establish a

separate account to be used exclusively for the payment of certain taxes and (c) all checks must

bear the designation "Debtor in Possession." In addition, there are separate requirements

contained in section 345 of the Bankruptcy Code respecting post-petition investments and

deposits by a debtor.  By this Motion, and pursuant to sections 105(a) and 363 of the Bankruptcy

Code, the Debtors seek (i) authorization to continue using their existing bank accounts and cash

management system, and a waiver of the Operating Guidelines to the extent set forth herein, (ii)

authorization to continue to use their current stock of existing correspondence and business forms

without reference to the Debtors' status as debtors in possession to the extent described below,

and (iii) a limited 60 day waiver of the requirements of section 345 of the Bankruptcy Code.

16.     In addition to the foregoing, the Debtors request that the Court authorize

and direct the Cash Management Bank:  (i) to continue to maintain, service and administer the

Bank Accounts, and (ii) to debit the Debtors' Bank Accounts in the ordinary course of business

on account of: (a) all checks, wires or ACH transfers authorized by Order of this Court

irrespective of whether or not such payments relate to pre-petition services; (b) all checks drawn

on the Debtors' accounts which are cashed at the Cash Management Bank or exchanged for

cashier's checks by the payees thereof prior to the Petition Date; (c) all checks or other items deposited in one of Debtors' Bank Accounts with the Cash Management Bank prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent that the Debtors were responsible for such items prior to the Petition Date; and (d) all undisputed pre-petition amounts outstanding as of the date hereof, if any, owed to the Cash Management Bank as service charges for the maintenance of the Cash Management System.

## BASIS FOR RELIEF REQUESTED

A.    **The Debtors Should be Permitted to Maintain Its Existing Bank Accounts and Cash Management System**

17.    In order for the Debtors to continue operating as a going concern, thereby preserving and protecting the value of their assets and operations for the benefit of all stakeholders, it is vital that it be permitted to maintain their existing Bank Accounts and continue using their current Cash Management System.  Therefore, the Debtors hereby seek authorization to continue utilizing their Cash Management System and existing Bank Accounts without disruption.

18.    Given the size and complexity of the Debtors' operations, and more significantly, the brevity of the anticipated shut-down period, the Debtors simply cannot efficiently facilitate their Chapter 11 efforts if there is substantial disruption in the Debtors' Cash Management System.  Moreover, to comply with the Operating Guidelines, the Debtors would need to, among other things, create a new system for manually issuing checks and paying post-

petition obligations.[7] It is highly unlikely that the Debtors would even be able to meet such requirements (e.g. by opening new accounts, revising cash management procedures and instructing various parties to redirect payments) prior to the anticipated shut-down date, making implementation of a new system futile and causing the Debtors to suffer from operational paralysis in the meanwhile.  Thus, it is essential that the Debtors be permitted to continue to manage their cash and transfer monies from their various Bank Accounts as needed and in amounts necessary to continue their operations.  Courts in this Circuit have often waived the requirement of closing the bank accounts.  See, e.g., In re Victory Memorial Hospital, et al., Case No. 06-44387 (CEC) (Bankr. E.D.N.Y. 2006); In re Brooklyn Hospital Center, Case No. 05-26990 (CEC) (Bankr. E.D.N.Y. 2005); In re Recoton Corporation, et al., Case Nos. 03-12180 (ALG) (Bankr. S.D.N.Y. 2003); In re Worldcom, Inc., et al., Case No., 02-13533 (ALG) (Bankr. S.D.N.Y. 2002); In re Global Crossing LTD, et al., Case No. 02-40188 (REG) (Bankr. S.D.N.Y. 2002); In re Metro Affiliates, Inc., Case Nos. 02-42560 (PCB) (Bankr. S.D.N.Y. 2002).  For the reasons set forth herein, and consistent with the relief granted in the cases cited above, the Debtors submit that it is in the best interest of their estate and creditors to obtain the relief requested.

**B.      The Debtors Should Be Authorized to Use Existing Business Forms**

19.      The continued use of existing checks, correspondence and other business forms relating to the Bank Accounts will allow the Debtors to continue operations while implementing their closure plan without the delay that would be expected to occur if the Debtors

---

[7]      Notwithstanding anything herein to the contrary, the Debtors reserve their right to close their pre-petition Bank Accounts and open new accounts as may be necessary in the Debtors' business judgment and consistent with any post-petition debtor in possession financing arrangement approved by the Court.  The Debtors will give notice, however, to the United States Trustee and any official committee that may be appointed in the Chapter 11 cases prior to opening or closing a bank account.

were required to suspend essential business functions pending the production of and transition to new forms. To minimize both the disruption and expense to the estate, the Debtors request authority to continue to use all correspondence and business forms including, but not limited to, checks, letterhead, purchase orders and invoices, as such forms were in existence immediately prior to the Petition Date, provided, however, that upon depletion of the Debtors' business forms stock, the Debtors will obtain new business forms reflecting their status as Debtors in possession.

20.     Because parties doing business with the Debtors undoubtedly will be aware of the Debtors' status as debtors in possession, changing business forms would be unnecessary and unduly burdensome, while causing disruption in the implementation of the Closure Plan. Bankruptcy courts have often allowed Debtors to use their pre-petition business forms without the "debtor in possession" label, at least until the Debtors' existing business forms stock was depleted. See, e.g., In re Loral Space & Communications Ltd., et al., Case No. 03-41710 (RDD) (Bankr. S.D.N.Y. 2003) (providing that checks should be stamped with such a label when practicable, but not requiring such a stamp); In re Acterna Corp., et al., Case No. 03-12837 (BRL) (Bankr. S.D.N.Y. 2003) (same); In re Worldcom, Inc., et al., Case No., 02-13533 (ALG) (Bankr. S.D.N.Y. 2002) (same); In re Jacom Computer Services, Inc., et al., Case Nos. 00-42719 (Bankr. S.D.N.Y. 2000).

21.     The Debtors represent that if the relief requested herein is granted, it will implement appropriate mechanisms to ensure that no payments will be made on any debts incurred by it prior to the Petition Date, other than those authorized by separate Order of this Court. To prevent the possible inadvertent unauthorized payment of pre-petition claims, the Debtors will work closely with the Cash Management Bank to ensure that appropriate procedures

are in place to prevent checks issued pre-petition from being honored without this Court's

approval.

**C.      The Debtors Should be Granted A Waiver of the Investment and Deposit
Requirements of Section 345**

22.      Section 345(a) of the Bankruptcy Code authorizes deposits or investments

of money "as will yield the maximum reasonable net return on such money, taking into account

the safety of such deposit or investment."  Section 345(b) of the Bankruptcy Code provides:

> Except with respect to a deposit or investment that is insured or guaranteed by the
> United States or by a department, agency, or instrumentality of the United States
> or backed by the full faith and credit of the United States, the trustee shall require
> from an entity with which such money is deposited or invested –
>
> (1)      a bond –
>          A.  in favor of the United States
>          B.  secured by the undertaking of a corporate surety approved by the
>          United States trustee for the district in which the case is pending; and
>          C.  conditioned on –
>                  (i)       a proper accounting of all money so deposited or invested
>                  and for any return on such money;
>                  (ii)      prompt repayment of such money and return; and
>                  (iii)     faithful performance of duties as a depository; or
> (2)      the deposit of securities of the kind specified in section 9303 of title 31;
> unless the court for cause orders otherwise.

23.      It is within the Court's discretion to extend or waive the investment

guidelines requirements of Section 345(b) of the Bankruptcy Code for "cause."  See 11 U.S.C.

§ 345(b); see also 140 Cong. Rec. H10752-01 (October 4, 1994) (Section 345(b) investment

guidelines may be "wise in the case of a smaller debtor with limited funds that cannot afford a

risky investment to be lost, [but] can work to needlessly handcuff larger, more sophisticated

debtors.").

24.     In determining whether "cause" exists under Section 345(b) of the Bankruptcy Code, the Court should consider the "totality of the circumstances," using the following factors (a) the sophistication of the debtor's business; (b) the size of the debtor's business operations; (c) the amount of the investments involved; (d) the bank ratings (Moody's and Standard and Poor) of the financial institutions where the debtor-in-possession funds are held; (e) the complexity of the case; (f) the safeguards in place within the debtor's own business of insuring the safety of the funds; (g) the debtor's ability to reorganize in the face of a failure of one or more of the financial institutions; (h) the benefit to the debtor; (i) the harm, if any, to the estate and (j) the reasonableness of the debtor's request for relief from section 345(b) requirements in light of the overall circumstances of the case. In re Service Merchandise Company, Inc., 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999).

25.     In other large chapter 11 cases, courts have liberally construed the requirement of section 345(b) of the Bankruptcy Code that a debtor-in-possession obtain a bond from any entity with which their money is deposited or invested.  In those instances, courts in this Circuit and others have waived the requirements of section 345(b) of the Bankruptcy Code and / or replaced them with alternatives.  See, e.g., In re Victory Memorial Hospital, et al., Case No. 06-44387 (CEC) (Bankr. E.D.N.Y. 2006) (waiving the requirements of § 345 where funds were held in accounts with Authorized Depositories as designated by the Office of the U.S. Trustee); In re Brooklyn Hospital Center, Case No. 05-26990 (CEC) (Bankr. E.D.N.Y. 2005) (substituting compliance with certain investment policies for the requirements of § 345); In re The Brunswick Hospital Center, Inc., Case No. 05-88168 (MLC) (Bankr. E.D.N.Y. 2005) (waiving the requirements of § 345); In re Recoton Corporation, et al., Case No. 03-12180 (ALG) (Bankr. S.D.N.Y. 2003) (substituting compliance with certain investment policies for the

requirements of § 345); <u>In re Metro Affiliates, Inc.</u>, Case No. 02-42560 (PCB) (Bankr. S.D.N.Y. 2002) (same).

26.    The Debtors' funds are held in accounts with an Authorized Depository listed by the Office of the U.S. Trustee for the Eastern District of New York.[8]  Thus, the Debtors submit that their funds will not be sufficiently at risk to necessitate strict adherence to the requirements of Section 345(b) of the Bankruptcy Code.  Moreover, if granted an interim waiver from such section, the Debtors will not be required to incur the significant administrative difficulty and expense relating to opening new accounts to ensure that all of their funds are fully insured or invested strictly in accordance with the restrictions established by Section 345(b) of the Bankruptcy Code.

27.    In other large cases, it has been recognized that the strict enforcement of cash management requirements does not serve the rehabilitative purposes of Chapter 11.  As such, several courts in this Circuit have waived such requirements and / or replaced them with alternatives that provide the same protections.  <u>See, e.g.</u>, <u>In re Victory Memorial Hospital, et al.</u>, Case No. 06-44387 (CEC) (Bankr. E.D.N.Y. 2006); <u>In re Brooklyn Hospital Center</u>, Case No. 05-26990 (CEC) (Bankr. E.D.N.Y. 2005); <u>In re The Brunswick Hospital Center, Inc.</u>, Case No. 05-88168 (MLC) (Bankr. E.D.N.Y. 2005); <u>In re Recoton Corporation, et al.</u>, Case No. 03-12180 (ALG) (Bankr. S.D.N.Y. 2003); <u>In re Metro Affiliates, Inc.</u>, Case No. 02-42560 (PCB) (Bankr. S.D.N.Y. 2002).  In light of the substantial amount of funds that will flow through the Bank

---

[8]    The list of authorized depository institutions is available at:
http://www.usdoj.gov/ust/r02/docs/chapt11/money_of_estates/EDNY_Depositories.pdf.

Accounts, it would be imprudent for the Debtors to eliminate their current practices.  The

Debtors respectfully submits that similar authorization is appropriate in this case.

**D.**     **The Cash Management Bank Should be Authorized to Continue to Maintain, Service and Administer the Debtors' Bank Accounts**

28.     The Debtors respectfully request that the Cash Management Bank be

authorized to continue to maintain, service and administer the Bank Accounts as accounts of the

Debtors, as Debtors in possession, without interruption and in the ordinary course.  In this regard,

the Cash Management Bank should be authorized to receive, process, honor and pay any and all

checks, ACH Payments and other instructions and drafts payable through, drawn or directed on

such Bank Accounts after the Petition Date by the holders, makers or other parties entitled to

issue instructions with respect thereto; provided, however, that any check, advice, draft or other

notification that the Debtors advised the Cash Management Bank to have been drawn, issued or

otherwise presented prior to the Petition Date may be honored by the Cash Management Bank

only to the extent authorized by order of this Court.

29.     The Debtors further request that Cash Management Bank be authorized to

accept and honor all representations from the Debtors as to which checks, drafts, wires or ACH

Payments should be honored or dishonored consistent with any order(s) of this Court and

governing law, regardless of whether such checks, drafts, wires or ACH transfers are dated prior

to or subsequent to the Petition Date.  The Debtors also request that in the event that the Cash

Management Bank honors a pre-petition check or other item drawn on any account that is the

subject of this Motion (a) at the direction of the Debtors, (b) in a good faith belief that the Court

has authorized such pre-petition check or intend to be honored or (c) as a result of an innocent

mistake made despite implementation of reasonable item handling procedures, it shall not be

deemed to be liable to the Debtors or to their estates on account of such pre-petition check or other item being honored post-petition.  The Debtors respectfully submit that such relief is reasonable and appropriate because the Cash Management Bank is not in a position to independently verify or audit whether a particular item may be paid in accordance with the Court's orders or otherwise.

30.     In the ordinary course, the Cash Management Bank charges, and the Debtors pay, honor or allow the deduction from the appropriate account, certain service and other fees, costs, charges and expenses (collectively, the "Bank Fees"). The Debtors respectfully request that the Cash Management Bank be given the authority to continue to charge the Debtors the Bank Fees to the Bank Accounts in the ordinary course. The Debtors further request that this Court order that no liens on any of the Bank Accounts granted to creditors shall take priority over the Bank Fees of the respective Cash Management Bank at which the account is located.

31.     For the reasons set forth herein, and consistent with the relief granted in the cases cited above, the Debtors submit that it is in the best interest of their estate and creditors to obtain the relief requested.

32.     The Debtors further submit that because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors for the reasons set forth herein, Rule 6003 of the Bankruptcy Rules has been satisfied.

33.     To successfully implement the foregoing, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the ten-day stay under Bankruptcy Rule 6004(h).

## NOTICE

34.      Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (i) the Office of the United States Trustee; (ii) Dormitory Authority of the State of New York; (iii) Healthcare Finance Group Inc.; (iv) St. Vincents Catholic Medical Centers of New York; (v) the Agent for the proposed Post-Petition Lender; (vi) the Debtors' 20 largest unsecured creditors; (vii) the Cash Management Bank; and (viii) all those who have entered an appearance in this case pursuant to Bankruptcy Rule 2002.

35.      The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PREVIOUS REQUEST

36.      No previous motion for the relief herein requested has been made to this or any other court.

## WAIVER OF MEMORANDUM OF LAW

37.      Pursuant to Rule 9013-1(b) of the Local Rules for the United States Bankruptcy Court, Eastern District of New York, because there are no novel issues of law presented herein, the Debtors respectfully request that the Court waive the requirement that the Debtors file a memorandum of law in support of this Motion.

[SIGNATURE PAGE FOLLOWS]

4541/20937-001 Current/11512804v11

**WHEREFORE**, the Debtors respectfully request that the Court enter an order

authorizing the relief requested herein, and grant such further relief as is just and proper.


Dated: February 6, 2009
      New York, New York


                                        **PROSKAUER ROSE LLP**

                                        By:  /s/ Jeffrey W. Levitan
                                           Jeffrey W. Levitan (JL 6155)
                                           Adam T. Berkowitz (AB-3714)
                                           1585 Broadway
                                           New York, NY  10036-8299
                                           Tel:  (212) 969-3000
                                           Fax:  (212) 969-2900

                                        Proposed Counsel for the Debtors and
                                        Debtors-In-Possession

4541/20937-001 Current/11512804v11

<u>Exhibit A</u>

**UNITED STATES BANKRUPTCY COURT,**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------- x

|  |  |  |
|---|---|---|
| **In re:** | : |  |
|  | : | Chapter 11 |
|  | : |  |
| **CARITAS HEALTH CARE, INC., et al.,**[1] | : | Case Nos. 09-    (  ) |
|  | : | through 09-    (  ) |
|  | : |  |
| **Debtors.** | : | (Jointly Administered) |

-------------------------------------------------------- x

**ORDER (I) MAINTAINING CASH MANAGEMENT SYSTEM AND EXISTING**
**BANK ACCOUNTS, (II) AUTHORIZING THE DEBTORS TO USE EXISTING**
**BUSINESS FORMS, (III) GRANTING A LIMITED WAIVER OF INVESTMENT**
<u>**AND DEPOSIT REQUIREMENTS  AND (IV) GRANTING RELATED RELIEF**</u>

           UPON the motion (the "<u>Motion</u>")[2] of Caritas Health Care, Inc. ("<u>Caritas</u>") and

the other above-captioned debtors and debtors-in-possession (collectively, the "<u>Debtors</u>"),

seeking entry of an order pursuant to sections 105, 363, 364, and 503(b)(1) of title 11 of the

United States Code (the "<u>Bankruptcy Code</u>") and Rule 6003 of the Federal Rules of Bankruptcy

Procedure (the "<u>Bankruptcy Rules</u>") (a) authorizing, but not requiring, the Debtors to continue

using their cash management system and maintain existing bank accounts, and authorizing a

waiver of certain operating guidelines relating to such bank accounts, (b) authorizing, but not

requiring, continued use of existing business forms, at least until the Debtors' existing business

forms stock is depleted, (c) granting a limited waiver from the investment and deposit guidelines

---

[1]       The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Caritas Health Care, Inc. (0364), Caritas Anesthesia Services, P.C. (4765), Caritas Cardiology Services, P.C. (1247), Caritas Emergency Medical Services, P.C. (5881), Caritas Family Health Services, P.C. (4113), Caritas Medical Services, P.C. (1143), Caritas OB/GYN Services, P.C. (1289), Caritas Pediatric Services, P.C. (6649) and Caritas Radiology Services, P.C. (1325).  The mailing address for all of the Debtors is 152-11 89th Avenue, Jamaica, New York 11432.

[2]       Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

of section 345 of the Bankruptcy Code, (d) authorizing the Cash Management Bank (defined below) to maintain, service and administer the accounts, and (e) authorize the Cash Management Bank to debit the bank accounts in the ordinary course of the Debtors' operations, and (iv) granting related relief; and it appearing that no further notice hereof is required except as provided for below; and sufficient cause appearing therefor; it is

      **ORDERED**, that the Motion is hereby granted; and it is further

      **ORDERED**, that the Debtors are authorized, but not required, to continue their pre-petition Cash Management System; and it is further

      **ORDERED,** that Caritas is authorized, but not required, to continue funding each of the PC Debtors on an as needed basis; and it is further

      **ORDERED**, that with respect to each transfer made by Caritas to a PC Debtor, Caritas is hereby granted a super-priority administrative expense claim pursuant to Section 364 of the Bankruptcy Code and each transfer shall be secured by a first priority lien on the relevant PC Debtors' accounts receivables and other assets; and it is further

      **ORDERED**, that the Debtors are authorized to maintain and continue to use, with the same account numbers, their accounts maintained with the Cash Management Bank; and it is further

      **ORDERED**, that the Debtors' Bank Accounts shall be treated for all purposes as accounts of the Debtors as Debtors-in-possession; and it is further

**ORDERED**, that the Debtors are authorized to use their existing Business Forms; and it is further

**ORDERED**, that the Debtors are granted a sixty (60) day extension of time to comply with the investment and deposit requirements of Section 345 of the Bankruptcy Code, which extension is without prejudice to the Debtors' ability to seek a final waiver of those requirements; and it is further

**ORDERED**, that the Cash Management Bank is authorized to transfer in the usual and ordinary course at the request and direction of the Debtors any funds in the Bank Accounts; and it is further

**ORDERED**, that the Cash Management Bank is authorized to receive, process, honor and pay any and all checks, ACH Payments and other instructions and drafts payable through, drawn or directed on such Bank Accounts after the Petition Date by the holders, makers or other parties entitled to issue instructions with respect thereto; provided, however, that any check, advice, draft or other notification that the Debtors advised the Cash Management Bank to have been drawn, issued or otherwise presented prior to the Petition Date may be honored by the Cash Management Bank only to the extent authorized by order of this Court; and it is further

**ORDERED**, that the Cash Management Bank is authorized to accept and honor all representations from the Debtors as to which checks, drafts, wires or ACH Payments should be honored or dishonored consistent with any order(s) of this Court and governing law, whether such checks, drafts, wires or ACH transfers are dated prior to or subsequent to the Petition Date; and it is further

ORDERED, that in the event that the Cash Management Bank honors a pre-petition check or other item drawn on any account that is the subject of this Order (a) at the direction of the Debtors, (b) in a good faith belief that the Court has authorized, or intends to authorize, such pre-petition check to be honored or (c) as a result of an innocent mistake made despite implementation of reasonable item handling procedures, it shall not be deemed to be liable to the Debtors or to their estate on account of such pre-petition check or other item being honored post-petition; and it is further

ORDERED, that the Cash Management Bank be given the authority to continue to charge the Debtors the Bank Fees in the ordinary course; and it is further

ORDERED, that no liens on any of the Bank Accounts granted to creditors (including the DIP Lender) shall take priority over the Bank Fees of the respective Cash Management Bank at which the account is located; and it is further

ORDERED, that all transfers to fund PC Debtors' operating deficits be granted super-priority administrative expense claim status pursuant to Section 364 of the Bankruptcy Code, and that each such transfer be secured by a grant of a first priority lien on the relevant PC Debtors' accounts receivable and other assets; and it is further

ORDERED, that the Debtors shall serve a copy of this Order by overnight delivery upon the Cash Management Bank within two (2) business days of the date hereof; and it is further

4

**ORDERED**, that this Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or relating to the implementation of this Order; and it is further

**ORDERED**, that Rule 6003(b) of the Bankruptcy Rules has been satisfied; and it is further

**ORDERED**, that notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon entry of this Order; and it is further

**ORDERED**, that the requirements of Bankruptcy Rule 6004(a) are waived.

Dated:    February __, 2009
        Brooklyn, New York

_____
UNITED STATES BANKRUPTCY JUDGE

## Exhibit B

### List of Bank Accounts

| Bank | Account # | Type |
|------|-----------|------|
| JP MorganChase & Co. | xxxxx8426 | Operating Account (Checking) |
| JP MorganChase & Co. | xxxxx3993 | Accounts Payable (Checking) |
| JP MorganChase & Co. | xxxxx8434 | Government Account (Deposit) |
| JP MorganChase & Co. | xxxxx9473 | Commercial Account (Deposit) |
| JP MorganChase & Co. | xxxxx4009 | Payroll Account (Checking ) |
| JP MorganChase & Co. | xxxxx6636 | Foundation (Checking) |
| JP MorganChase & Co. | xxxxx4501 | Radiology Services PC |
| JP MorganChase & Co. | xxxxx4519 | OB/GYN Services PC |
| JP MorganChase & Co. | xxxxx4527 | Pediatric Services PC |
| JP MorganChase & Co. | xxxxx5227 | Family Health Services PC |
| JP MorganChase & Co. | xxxxx4485 | Cardiology Services PC |
| JP MorganChase & Co. | xxxxx4493 | Medical Services PC |
| JP MorganChase & Co. | xxxxxxx2065 | Anesthesia Services PC |
| JP MorganChase & Co. | xxxxxxx0465 | Emergency Medical Services PC |

**<u>Exhibit C</u>**

**Flow Chart**



**Inside Company**        **Outside Company**

**Operating Account**
Account # 134768426

Receipts - remittances from HFG; rents; subsidies; fundraising amounts; DASNY loan proceeds
Disbursements – Accounts Payable Account; Payroll Account; PC Accounts; DASNY loan proceeds transferred to Foundation Account until needed

**Deposit Accounts**
Commercial Account # 13476943
Governmental Account # 134768434

Receipts - payments for medical services
Disbursements - balance swept daily to HFG

**GENERAL HOSPITAL RECEIVABLES**

**HFG**

Receipts - daily balance sweeps from Deposit Accounts
Disbursements - remainder after debt service and certain other deductions is disbursed to the Operating Account

**RENTS AND SUBSIDIES; DASNY LOANS**

**Foundation Account**
Account # 753996636

Receipts - donations generated by fund raising events; proceeds of DASNY loans
Disbursements - net proceeds of fundraising events remitted to Operating Account; DASNY loan proceeds disbursed as needed

**DONATIONS**

**Accounts Payable Account (ZBA)**
Account # 601893993

Receipts - transfers from Operating Account as needed
Disbursements - all non-payroll expenses

**Payroll Account**
Account # 601894009

Receipts - transfers from Operating Account as needed
Disbursements - payroll expenses

**PC Accounts**
Radiology Account # 733424501
OB/GYN Account # 733424519
Pediatrics Account # 733424527
Family Account # 733425227
Cardiology Account # 733424485
Medicine Account # 733424493
Anesthesia Account # 97360352065
Emergency  Account # 91360350465

Receipts - patient receipts; transfers from the Operating Account for deficit funding
Disbursements - PC Payroll and other PC accounts payable

**PC RECEIVABLES**